Filed 4/28/23  Keading v. Keading CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| KENTON KEADING,<br><br>　　　Defendant and Appellant,<br><br>v.<br><br>HILJA KEADING,<br><br>　　　Plaintiff and Respondent. | A153628<br><br>(Contra Costa County<br>Super. Ct. No. MSP16-00402) |

Kenton Keading,[1] appearing in pro per, appeals from a postjudgment order of the trial court awarding attorney fees and costs to Hilja Keading after she prevailed at trial on her Probate Code[2] section 850 petition to remove Kenton as trustee of the family trust and recover trust assets. We find no abuse of discretion and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A detailed discussion of the factual and procedural history of the dispute between siblings Kenton and Hilja, which we adopt and incorporate by reference, is set out in our partially published opinion in *Keading v. Keading* (2021) 60 Cal.App.5th 1115 (*Keading I*) and in our unpublished

---

[1]　Due to the commonality of the Keading last name, we refer to the Keading family members by their first names. No disrespect is intended.

[2]　Further unspecified section references are to the Probate Code.

1

opinions in *Keading v. Keading* (Mar. 30, 2021, A157476) (nonpub. opn.), *Keading v. Keading* (July 30, 2021, A158590) (nonpub. opn.), and *Keading v. Keading* (Sept. 21, 2022, A159795) (nonpub. opn.). We set forth only those background events that are relevant to the issues raised in this appeal.

Kenton and Hilja were the beneficiaries of a family trust created by their parents, Lucille and Lewis. The trust was amended several times over the years, including in October 2015 when surviving settlor Lewis executed a final amendment to the trust providing for an equal division of the trust assets between the siblings. (*Keading I*, *supra*, 60 Cal.App.5th at p. 1120.)

After Lewis passed away, in March 2016, Hilja filed an ex parte petition under section 850[3] seeking Kenton's removal as trustee, appointment of a successor trustee, and recovery of trust assets under theories of intentional interference with expected inheritance; fraud; conversion; and elder financial abuse. The petition identified the trust's assets as follows: real property at 60 Laurel Lane, 50 Laurel Lane, and 21 Laurel Lane, in El Sobrante (hereafter the residence); two bank accounts; and various tangible personal property including automobiles, furniture, jewelry and artwork.

According to the petition, in January 2016, as Lewis lay on his deathbed, Kenton fraudulently executed and recorded a deed purporting to transfer the residence from the trust to himself and Lewis as joint tenants. Kenton allegedly signed the deed as Lewis's attorney-in-fact even though he knew that Lewis had previously appointed Hilja to serve in this capacity. Kenton also allegedly forced Lewis to sign over a stock certificate to him and,

---

[3] The petition was also brought under section 17200, which permits a trustee or trust beneficiary to petition the trial court concerning the internal affairs of the trust (§ 17200, subd. (a)), and section 4541, which authorizes a petition to determine various matters concerning powers of attorney.

2

after Lewis's death, sold the settlors' 2008 Chrysler vehicle and kept the proceeds for himself.

Regarding the claim of elder abuse, Hilja alleged that Kenton occupied the settlors' home "as a squatter, obstructed their access to health care services, verbally abused them, chastised them for their frailty, consumed their prescribed dietary supplies, monitored and controlled their communications with third parties, and neglected their hygiene." He further "procured his appointment as the settlors' attorneys in fact" and "neglected their finances, self-dealt with their assets for his personal benefit and concealed financial information from them."

A trial was held on Hilja's petition in June and July 2017. In August 2017, the trial court issued its statement of decision finding Kenton liable for elder abuse and breach of fiduciary duty. According to the court, Hilja proved by a preponderance of the evidence that the transfers of the residence and the shares of Freedom Motors stock were the result of elder abuse and breaches of fiduciary duty, and that no justification had been presented for the transfer of the Chrysler. The court ordered that the successor trustee, Elizabeth Soloway, receive immediate possession of "the premises commonly known as 60, 50, and 21 Laurel Lane," and that the January 2016 transfer of 99,678 shares of Freedom Motors stock from Lewis to Kenton be invalidated.[4]

---

[4]     However, the trial court found that because it was unclear whether the stocks were trust assets or Lewis's separate property, "[t]he trustee may need to move to confirm the stock as an asset of the trust, if she concludes that is necessary and appropriate." The court also noted that because Hilja did not request any relief with regard to the personal property at the residence, "it will be up to [the current trustee] to address proper inventory of the personal property, including whether any property was disposed of in such a manner that it does not belong to the trust."

3

The trial court awarded the trust double recovery under section 859 as follows: $1,523,330 (twice the stipulated value of the residence) and $17,000 (twice the value of the Chrysler). The court directed Hilja to file a motion for attorney fees within 30 days of the statement of decision becoming final.[5]

Hilja moved for $598,158.93 in attorney fees and $18,704.25 in costs. She argued that the trial court's elder abuse findings mandated a fee award under Welfare and Institutions Code section 15657.5, subdivision (a), and that fees need not be apportioned between the elder abuse claim and the other theories of relief alleged in the petition because they all involved the same facts constituting Kenton's elder abuse. Alternatively, Hilja argued that the court had discretion to award attorney fees and costs under section 859 because Hilja prevailed on her claim under section 850.

In opposing the motion, Kenton contended the trial court should hold an evidentiary hearing to resolve disputes regarding the amount of fees incurred. Kenton further argued that the number of hours upon which the fee motion was based was excessive; the fees claimed for successor trustee Soloway were overstated, without merit, and double-billed; and a fee award was excessive, unreasonable, and unnecessary because Hilja was represented by her counsel under a contingency fee agreement.

On November 13, 2017, the trial court heard the fee motion. A minute order (hereafter the November 13 minute order) reflects the court's tentative ruling to grant fees to Hilja under Welfare and Institutions Code section

---

[5]     In *Keading I*, we affirmed the judgment in favor of Hilja, concluding that substantial evidence supported the trial court's finding of elder financial abuse under Welfare and Institutions Code section 15610.30, and that the award of double damages under section 859 was proper without a separate finding of bad faith. (See *Keading I, supra,* 60 Cal.App.5th at pp. 1126–1131.)

4

15657.5, subdivision (a). As the court explained, "In her motion, Hilja argues that a fee award is mandatory under Welfare and Institutions Code section 15657.5(a), and that the fees on the separate claims are so intertwined that it is not possible to separate work done on one claim from work done on another. [Citation.] This appears to be correct."

The trial court denied Kenton's request for an evidentiary hearing as unnecessary because the record of fee documentation submitted by Hilja did not appear "unreasonable on its face," and Kenton's conclusory objections did not rebut the presumption that Hilja's fees were reasonably incurred.

The trial court agreed with Hilja that a multiplier should be applied to the lodestar, but the court determined the appropriate multiplier to be 1.25 rather than the requested 1.75. The court agreed with Kenton, however, that the participation of two of Hilja's attorneys at the trial was unnecessary, so it reduced the fees for one of the attorneys by half and reduced the billing rates for all of Hilja's attorneys. Finally, the court found that Hilja's request for costs was reasonable. The court ordered "that the award be paid by Kenton to Hilja. In the event that Kenton does not pay any of or the full amount of the fee award, however, any shortfall shall be payable by the trust to Hilja, and charged to Kenton's share of the trust." The court further directed Hilja's counsel "to submit a new fee declaration making the adjustments set forth in this order." The November 13 minute order reflects that the court then took the matter under submission.

In early December 2017, Hilja's counsel, Jonna Thomas, filed a supplemental declaration making various adjustments to the fee motion pursuant to the trial court's prior rulings.[6] On December 21, 2017, the trial

---

6    Thomas also requested additional fee amounts for hours incurred to prosecute the fee motion and to oppose Kenton's motion for new trial, as well

5

court issued its "Order Granting Motion for Attorneys' Fees Award," awarding Hilja $441,295.63 in attorney fees and $18,704.25 in costs (the December 21 order).[7]

On February 5, 2018, Kenton filed a notice of appeal from the December 21 order.

## DISCUSSION

Under section 850, any interested person may petition for an order of conveyance of transfer of property in cases where a trustee is in possession of, holds title to, or has a claim to real or personal property, and another person claims ownership, title, or possession of said property. (§ 850, subd. (a)(3)(A), (B).) The petition may include causes of action or matters "that are normally raised in a civil action" if they are factually related to the subject matter of the petition. (§ 855.) The petitioner must give 30 days' notice of the hearing on the petition to various persons, including "[e]ach person claiming an interest in, or having title to or possession of, the property." (§ 851, subd. (a)(2).)

If the trial court is satisfied that a conveyance, transfer, or other order should be made, the court shall order the personal representative or other fiduciary or the person having title to or possession of the property to execute a conveyance or transfer to the person entitled thereto or grant other appropriate relief. (§ 856.) Upon such order, "[t]he petitioner is then deemed to have 'recovered' the property for purposes of section 859—even if the actual conveyance has yet to occur." (*Estate of Ashlock* (2020) 45 Cal.App.5th 1066, 1074 (*Ashlock*), citing § 857, subd. (b).)

---

as trial hours she claimed were inadvertently omitted from her original declaration.

[7] The trial court also awarded Soloway attorney fees in the amount of $39,418.00. This particular award is not contested in this appeal.

Various remedies are available for the wrongful taking, concealment, or disposition of property as alleged in a section 850 petition. Section 859 provides, in relevant part: "If a court finds that a person has in bad faith wrongfully taken, concealed, or disposed of property belonging to . . . an elder, . . . [or] a trust, . . . or has taken, concealed, or disposed of the property by the use of undue influence in bad faith or through the commission of elder or dependent adult financial abuse, as defined in Section 15610.30 of the Welfare and Institutions Code, the person shall be liable for twice the value of the property recovered by an action under this part. In addition, except as otherwise required by law, including Section 15657.5 of the Welfare and Institutions Code, the person may, in the court's discretion, be liable for reasonable attorney's fees and costs. The remedies provided in this section shall be in addition to any other remedies available in law to a person authorized to bring an action pursuant to this part."

## A. Appellate Jurisdiction

As a threshold matter, Hilja argues that because Kenton timely appealed only from the December 21 order fixing the amount of attorney fees and not from the November 13 minute order awarding fees, we lack appellate jurisdiction to consider Kenton's arguments challenging Hilja's right to a fee award. We disagree, as Kenton was not required to separately appeal from the November 13 minute order.

The time to appeal from an appealable postjudgment order begins to run once the order is final—i.e., the order "contemplate[s] no further action, such as the preparation of another order or judgment" and "dispose[s] of all issues between all parties." (*Laraway v. Pasadena Unified School Dist.* (2002) 98 Cal.App.4th 579, 583.) "[W]here findings of fact or a further or formal order is required, an appeal does not lie from a minute order."

7

(*Herrscher v. Herrscher* (1953) 41 Cal.2d 300, 304.)  Here, the November 13 minute order contemplated further preparation of another order pending Hilja's supplemental filings and was therefore not a final order on the fee motion.  Accordingly, Kenton's timely appeal from the December 21 order adequately preserved our jurisdiction to review the court's fee ruling in its entirety.

## B. Hilja's Right to Attorney Fees

Kenton challenges the trial court's fee award to Hilja on the ground that attorney fees cannot be awarded pursuant to an unconstitutional statute, and that here, the application of section 859's double recovery provision suffered from various constitutional infirmities.  Specifically, Kenton argues:  (1) the double recovery provision violates the Equal Protection Clause of the United States Constitution because it punishes those who take property more harshly than those who sell it; (2) section 859 is unconstitutionally vague because it lacks explicit standards for what constitutes "bad faith" and how the value of the recovered property is to be assessed; and (3) the trial court violated Kenton's right to constitutional due process by failing to conduct an evidentiary hearing prior to the imposition of double damages.

In response, Hilja argues that notwithstanding Kenton's various challenges to the constitutionality of section 859 and the award of fees pursuant to that statute, a fee award was mandatory under Welfare and Institutions Code section 15657.5.  We agree.

As set forth above, section 859 makes a fee award discretionary "except as otherwise required by" Welfare and Institutions Code section 15657.5, subdivision (a), which provides that "[w]here it is proven by a preponderance of the evidence that a defendant is liable for financial abuse as defined in

8

[Welfare and Institutions Code] Section 15610.30, in addition to compensatory damages and all other remedies otherwise provided by law, the court *shall* award to the plaintiff reasonable attorney's fees and costs." (Italics added.) The trial court correctly concluded that a fee award was mandatory because Kenton was previously found liable for elder financial abuse within the meaning of Welfare and Institutions Code section 15610.30—a finding we affirmed in *Keading I.* (*Keading I, supra*, 60 Cal.App.5th at pp. 1125–1128.)

We agree with Hilja that the trial court was not required to apportion the fees incurred between the elder financial abuse claim (for which fees were mandatory under Welfare and Institutions Code section 15657.5) and the breach of fiduciary duty claim (for which fees were merely discretionary under section 859). Indeed, even in cases involving causes of action that allow for fees and those that do not, " '[a]ttorneys fees need not be apportioned between distinct causes of action where plaintiff's various claims involve a common core of facts or are based on related legal theories' " or "when the issues in the fee and nonfee claims are so inextricably intertwined that it would be impractical or impossible to separate the attorney's time into compensable and noncompensable units." (*Graciano v. Robinson Ford Sales, Inc.* (2006) 144 Cal.App.4th 140, 158–159.) The decision whether to apportion fees and costs rests within the sound discretion of the trial court, and discretion is abused only when a ruling exceeds the bounds of reason. (*Bell v. Vista Unified School Dist.* (2000) 82 Cal.App.4th 672, 687.)

Here, the record—including the petition, statement of decision, and the fee documentation of Hilja's counsel—supports the trial court's implied finding that fees were incurred on issues common to all of Hilja's theories of relief, and they were so intertwined that it would have been impracticable to

9

separate the attorneys' time between the elder financial abuse and other theories. Although Kenton resists this conclusion, he provides no cogent argument that the court's decision exceeded the bounds of reason. (See *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830 [lack of cogent argument allows court to treat contention as forfeited].)

Because Welfare and Institutions Code section 15657.5, subdivision (a), independently supports the entire fee award due to the intertwined nature of the theories for relief, we need not resolve Kenton's arguments regarding section 859. Even if meritorious, none of Kenton's arguments about the unconstitutionality of section 859's double recovery provision would invalidate the mandatory award of fees where, as here, elder financial abuse has been proven.[8]

For the foregoing reasons, we conclude the trial court did not err in making the attorney fee award.

## C. Remaining Arguments

### 1. Void or Voidable Judgment[9]

Kenton contends the attorney fee award must be vacated because the underlying judgment is void and/or voidable due to the trial court's lack of jurisdiction in awarding relief under section 859. Hilja gives short shrift to

---

[8]     We likewise need not resolve Kenton's related arguments that the trial court abused its discretion by failing to apply legislative principles and facts relevant to the attorney fee provision of section 859. These arguments are premised on the court's discretionary award of fees under section 859, but the fee award in this case was mandatory under Welfare and Institutions Code section 15657.5.

[9]     Two days before oral argument, Kenton moved to strike various portions of his own opening and reply briefs advancing the argument that the judgment is void and/or voidable. We deny his belated motion to strike.

this argument and simply contends that Kenton cannot assert this new theory for the first time on appeal.

Although not cited by the parties, courts have often held that a judgment that is void on its face is subject to direct or collateral attack at any time, including for the first time on appeal. (See *County of San Diego v. Gorham* (2010) 186 Cal.App.4th 1215, 1228; *People ex. Rel. Lockyer v. Brar* (2005) 134 Cal.App.4th 659, 666; *National Diversified Services, Inc. v. Bernstein* (1985) 168 Cal.App.3d 410, 417). That said, this is not Kenton's first appeal. In *Keading I,* Kenton challenged the judgment on various grounds, but not on the voidness theory he presents here. Having failed to raise this legal issue in *Keading I*, and providing no good cause or justification for his delay, Kenton is precluded from presenting this new issue now. (See *Rincon EV Realty LLC v. CP III Rincon Towers, Inc.* (2019) 43 Cal.App.5th 998, 1001–1004 [appellants could not raise new issues in second appeal that they could have raised in first appeal]; *People v. Senior* (1995) 33 Cal.App.4th 531, 535–536 [absent showing of good cause or justification for delay, all available arguments must be raised in initial appeal from judgment].)

Furthermore, even if we were to assume for the sake of argument that Kenton's voidness claim was preserved, we would conclude it lacks merit. A judgment is void if the trial court lacked fundamental jurisdiction; that is, " ' "an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties." ' " (*Lee v. An* (2008) 168 Cal.App.4th 558, 563; see *Johnson v. E-Z Ins. Brokerage, Inc.* (2009) 175 Cal.App.4th 86, 98.) A judgment is void on its face only if its invalidity is apparent from an inspection of the judgment roll without consideration of extrinsic evidence. (*OC Interior Services, LLC v. Nationstar Mortgage, LLC*

(2017) 7 Cal.App.5th 1318, 1327 (*OC Interior Services*); see Code Civ. Proc., § 670, subd. (b) [judgment roll includes statement of decision].)

Here, Kenton bases his voidness claim on language in section 859 that provides for relief in the amount of "twice the value of the property *recovered by an action under this part*." (Italics added.) Citing *In re Pereira and Melo Dairy* (Bankr. E.D.Cal. 2005) 325 B.R. 1 (*Pereira*) and *Ashlock, supra*, 45 Cal.App.5th 1066, Kenton first argues that a recovery order under section 856 is a prerequisite to the award of relief under section 859, but the statement of decision in this case affirmatively discloses that ownership of the Freedom Motors stock and the personal property found at the residence remained in doubt after trial. Thus, Kenton believes the judgment roll affirmatively shows that the trial court was without jurisdiction to award relief under section 859 because some of the property was not previously "recovered by an action under this part." We reject these arguments. Neither *Ashlock* nor *Pereira* provides support for Kenton's voidness theory beyond their general observation that an order of recovery under section 856 logically precedes the award of relief under section 859.[10]

Nor does Kenton provide support for his assumption that recovery of property under section 856 necessarily entails a separate procedure, hearing,

---

[10]     *Ashlock* described a recovery order under section 856 as a "prerequisite" to the award of relief under section 859 in order to explain its method of calculating double recovery, which differed from the calculation method applied in another appellate case that "merge[d] the restorative obligation with the punitive penalty" to yield a lesser amount. (See *Ashlock, supra*, 45 Cal.App.5th at p. 1077 [disagreeing with *Conservatorship of Ribal* (2019) 31 Cal.App.5th 519].) The federal bankruptcy court in *Pereira* generally observed that recovery of property under section 856 precedes the award of relief under section 859 in order to reject an argument that the court's main holding left "no temporal limitation" on the availability of relief under section 859. (*Pereira, supra*, 325 B.R. at pp. 3–5.)

and order on the judgment roll. Notably, section 856 provides that if the trial court is satisfied that the property in question should be recovered, "the court shall make an order" transferring title or possession of the property to the rightful person, whereupon the person is deemed to have recovered the property. (*Ashlock, supra,* 45 Cal.App.5th at p. 1074, citing § 857.) Here, the statement of decision contained the trial court's order invalidating the transfer of the residence and giving the successor trustee immediate possession to the property. In other words, the statement of decision reflected both the prerequisite order of recovery under section 856 and the subsequent award of relief under section 859.

Even assuming (generously) that one may establish the voidness of a judgment in the manner Kenton posits, his argument is flawed because the trial court did not award double recovery for either the Freedom Motors stock or the personal property—the only two categories of property for which ownership remained unresolved after the trial. Rather, the double recovery award was calculated based on the value of the residence (which was, in fact, "recovered by an action under this part") and the Chrysler (which was indisputably sold). Thus, even under the voidness theory that Kenton espouses, he fails to show that the judgment here is void on its face. (*OC Interior Services, supra*, 7 Cal.App.5th at p. 1327.)

Kenton alternatively contends the judgment is voidable based on extrinsic evidence—namely, a letter submitted by David Phillips, executive director of Earth Island Institute (EII), in support of Kenton's petition to the Supreme Court to grant review in *Keading I.* In his letter, dated May 21, 2021, Phillips asserts that EII "is the owner of record of the property at 21 Laurel Lane," and that he learned for the first time "during the trial court proceedings in the underlying case" that EII's property was wrongfully

13

included as trust property. According to Phillips, EII was not provided with notice of the proceedings and an opportunity to demonstrate that 21 Laurel Lane belongs to EII, not the trust. Kenton also submits, in an appendix to his opening brief, copies of a 2005 grant deed and a 2017 county tax assessment bill that purportedly show EII to be the record owner of 21 Laurel Lane.

We need not entertain this argument at length. Kenton provides no authority for the proposition that a party may, for the first time on appeal from a postjudgment fee order, attack the underlying judgment as voidable based on extrinsic evidence never presented in an appropriate and timely motion to the trial court below. (See *OC Interior Services*, *supra*, 7 Cal.App.5th at p. 1328 [judgment not void on its face may be set aside by motion under Code of Civil Procedure section 473, subdivision (b) within reasonable time after party learns of judgment or in independent equitable action without time limit].)

Based on the foregoing, we reject Kenton's challenge to the attorney fee order based on his contention that the underlying judgment is void or voidable.

### 2. Failure to Hold Evidentiary Hearing

Kenton contends the trial court abused its discretion by failing to hold an evidentiary hearing to resolve factual disputes concerning attorney fees. The contention lacks merit.

"[T]he fee setting inquiry in California ordinarily begins with the 'lodestar,' i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate. . . . The lodestar figure may then be adjusted, based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided." (*PLCM Group, Inc. v.*

14

*Drexler* (2000) 22 Cal.4th 1084, 1095 (*PLCM*).)  Lodestar evidence is

" 'entitled to credence in the absence of a clear indication the records [were]

erroneous.' " (*Roos v. Honeywell Internat., Inc.* (2015) 241 Cal.App.4th 1472,

1494 (*Roos*), disapproved on other grounds by *Hernandez v. Restoration

Hardware, Inc.* (2018) 4 Cal.5th 260, 269–270.)  Once credible lodestar

evidence is presented, the burden shifts to the opposing party to present

"specific objections, supported by rebuttal evidence." (*Roos,* at p. 1494.)

"General arguments that fees claimed are excessive, duplicative, or unrelated

do not suffice." (*Premier Medical Management Systems, Inc. v. California

Ins. Guarantee Assn.* (2008) 163 Cal.App.4th 550, 564.)

"[T]he trial court has broad authority to determine the amount of a

reasonable fee." (*PLCM, supra*, 22 Cal.4th at p. 1095.)  That is because the

trial court " ' "is the best judge of the value of professional services rendered

in [its] court, and while [its] judgment is of course subject to review, it will

not be disturbed unless the appellate court is convinced that it is clearly

wrong" '—meaning that it abused its discretion." (*Ibid*.)  It is also within the

trial court's broad discretion to decide whether to take oral testimony in

evaluating a fee motion. (*Rosenthal v. Great Western Fin. Securities Corp.*

(1996) 14 Cal.4th 394, 413–414.)  " '[T]he appropriate test for abuse of

discretion is whether the trial court exceeded the bounds of reason.  When

two or more inferences can reasonably be deduced from the facts, the

reviewing court has no authority to substitute its decision for that of the trial

court.' " (*Roos, supra,* 241 Cal.App.4th at p. 1482.)

Kenton contends an evidentiary hearing was required because Hilja's

documentation of hours was "inadequate," and the hours billed were

"duplicative or unnecessary."  However, the trial court found that Hilja's fee

documentation was not unreasonable on its face, and that Kenton failed to

15

demonstrate a " 'clear indication' " that the documentation was erroneous. (*Roos*, supra, 241 Cal.App.4th at p. 1494.) The trial court also found that Kenton's conclusory objections to the fee claim were inadequate to rebut the presumed reasonableness of the fees. (*Ibid*.) Based on the trial court's findings, which find substantial support in the record, we conclude the court did not abuse its discretion in determining an evidentiary hearing was unnecessary. (See *Nissan Motor Acceptances Cases* (2021) 63 Cal.App.5th 793, 811.) It also bears mentioning that, notwithstanding Kenton's lack of specific rebuttal evidence, the trial court agreed with him that the participation of two of Hilja's attorneys at trial was duplicative, and thus the court ordered a significant reduction in hours for one of the attorneys and a reduction in the billing rates for all of Hilja's attorneys. Kenton fails to demonstrate that these reductions were inadequate to address his general objections in lieu of an evidentiary hearing.

Kenton further argues that an evidentiary hearing was necessary to determine whether Hilja unnecessarily incurred attorney fees because the case could have settled through mediation. According to Kenton, "[d]espite a court order of parties to mediation and [Kenton's] request to do so, [citation] such mediation never occurred." However, Kenton cites no evidence in the record indicating that Hilja and her attorneys were responsible for any failed mediation. Indeed, the only supporting evidence he cites is an email from Hilja's attorney seeking to meet and confer on potential mediation dates, with no indication or evidence of Kenton's response. Based on this meager showing, the trial court did not abuse its discretion in concluding an evidentiary hearing was unnecessary.

16

### 3. Forfeited Contentions

Kenton contends the trial court abused its discretion by failing to adhere to *Donahue v. Donahue* (2010) 182 Cal.App.4th 259 (*Donahue*), which endorsed the use of "[a] comparative analysis of each side's respective litigation costs" as "a useful check on the reasonableness of any fee request." (*Id.* at p. 272 [noting the court " 'can look to how many lawyers the other side utilized in similar situations as an indication of the effort required' "].)

We conclude Kenton forfeited this contention by failing to raise it in the trial court below. (*Findelton v. Coyote Valley Band of Pomo Indians* (2018) 27 Cal.App.5th 565, 569.) But even assuming the issue was preserved, and assuming further that *Donahue* applies to a fee motion where the opposing party is a self-represented litigant, we conclude the contention lacks merit. *Donahue* did not hold that a comparative analysis is required in every case, only that such analysis may be "useful" where, as in *Donahue*, there was a significant disparity between the number of attorneys on each side of the litigation. (See *Donahue, supra,* 182 Cal.App.4th at pp. 262, 272 [former trustee retained eight attorneys from three major law firms as compared to two attorneys retained by trust beneficiary].) Here, the record reflects that the vast majority of work on Hilja's behalf was performed by three attorneys from the same law firm, and even then, the trial court significantly reduced the compensable hours for one of her trial attorneys. More importantly, the trial court expressly found that "[t]he protracted and adversary nature of the proceedings justifie[d] an increased number of hours" for Hilja's attorneys, and substantial evidence in the record supports this finding.[11] On this

---

[11] As Thomas stated in her declaration, Kenton made numerous unsuccessful ex parte and noticed motions in the trial court, pursued "excessive discovery" (including 32 form interrogatories, 99 special interrogatories, 72 document demands, and 39 requests for admission), and

record, we conclude a comparative analysis under *Donahue* was neither required nor likely to have affected the court's decision.

Finally, Kenton contends the trial court abused its discretion by failing to follow case authority holding that a fee award may not exceed the amount a party is contracted to pay to counsel, whether such fee is fixed or contingent. (See *Johnson v. Georgia Highway Express, Inc.* (1974) 488 F.2d 714, 718 ["In no event, however, should the litigant be awarded a fee greater than he is contractually bound to pay, if indeed the attorneys have contracted as to amount"].) According to Kenton, the trial court knew that Hilja retained her counsel on a contingency fee basis[12] but failed to investigate and determine whether the fee award exceeded the expected contracted amount.

We conclude Kenton has doubly forfeited his contention under *Johnson* by failing to raise it both in the trial court below and in his opening brief on appeal. (See *People v. Morales* (2020) 10 Cal.5th 76, 98 [appellant "doubly forfeited" argument by failing object in trial court or raise issue in opening appellate brief]; *Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764 [points raised for first time in reply brief will ordinarily not be considered because it would deprive respondent of opportunity to counter argument].) Furthermore, and in any event, it appears clear from the record that the

---

refused to comply with his own discovery obligations, requiring Hilja's attorneys to move to compel, which they did successfully. Thomas further averred that her office spent significant time opposing Kenton's attempts to expunge Hilja's notice of pendency of action and pursuing writs of attachment before trial.

[12] As Thomas indicated in her declaration supporting the fee motion, Hilja's obligation under the contingency fee agreement was to pay her counsel 40 percent of her net recovery resulting from the judgment awarded in this action.

$441,295.63 fee award did not exceed the expected contracted amount, i.e., 40 percent of the $1.5 million judgment.  (See fn. 12, *ante.*)

## DISPOSITION

The trial court's order awarding attorney fees to Hilja is affirmed. Hilja is entitled to her costs on appeal.

FUJISAKI, ACTING P.J.

WE CONCUR:

PETROU, J.

RODRÍGUEZ, J.

*Keading v. Keading* (A153628)

19